SARAH A. MARTIN v. WM. G. GOULD and Another.[1]

March 6, 1908.

Nos. 15,470—(214).

**Negligence—Contributory Negligence.**

In this, a personal injury action, the evidence was sufficient for the jury to decide the following questions: Were appellants guilty of negligence in furnishing an improper instrumentality? and did respondent's in-

[1] Reported in 115 N. W. 276.

testate assume the risks of his occupation? or was he guilty of contributory negligence?

Action in the district court for McLeod county by the administratrix of the estate of Omar Martin, deceased, to recover $5,000 for the death of her intestate. On the trial before Morrison, J., at the close of plaintiff's case, the defendants rested and their motion for a directed verdict was denied. The jury then rendered a verdict in favor of plaintiff for $1,000. A motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*M. H. Boutelle* and *R. T. Boardman,* for appellants.

*H. J. Peck* and *Reed & Brown,* for respondent.

LEWIS, J.

Appellants were engaged in operating a ditching machine, which was propelled by means of a wire cable attached to two capstans. On this occasion the capstans had been carried forward a distance of about eighty rods from the machine, and in so doing one of the wire cables was not straight when the capstan was started, and it became necessary to straighten it. Each of the capstans was operated by four horses attached to a lever, and Martin, respondent's intestate, was driver of one of the teams. Mr. Beihoffer, one of the appellants, noticing that it was necessary to straighten the cable, called Martin to come with his team and do so. Martin drove the team to a point a few rods distant from the capstan, bringing with him a small chain which had been attached to the cook wagon. The chain was doubled two or three times, leaving a space of about three feet between the cable and the evener, and Martin was driving the team by walking behind the cable. The chain broke, releasing the cable, which, being taut, flew back and struck Martin, resulting in injuries which caused his death.

Appellants are charged with negligence in failing to furnish proper instrumentalities. Only one witness was sworn at the trial, Mr. Underwood, and according to his testimony it was not an unusual occurrence that in moving the capstans forward it would be necessary to straighten the cables in the manner mentioned. Martin had assist-

ed on former occasions in doing that work, but the team had always been attached to the cable in one of two ways—either by using a long, large, and heavy logging chain, which left plenty of room between the team and cable for the driver to walk, or by attaching a hook in the evener to the cable without any chain. The small chain used at the time of the accident had never been used for such purpose, and appellants insist that it conclusively appears from the evidence that Martin voluntarily and of his own motion, without any direction from appellants, took it from the cook wagon and used it for the purpose stated, and that there is no evidence to show that appellants furnished the chain as an instrumentality. Appellants also claim that Martin assumed the risks of the occupation and was guilty of contributory negligence.

It does appear from the testimony of the witness Underwood that Martin, on being called by Beihoffer to bring the team and straighten the cable, went over to the cook wagon and got the small chain. The witness testified that he did not hear Beihoffer tell him to bring that chain; but neither did he testify that Martin was not told to get it. After bringing the chain, Beihoffer either helped Martin in attaching it, or stood immediately by and directed his movements, or acquiesced in whatever he did in the use of the chain. It appears that all of the other large logging chains which had previously been used for that purpose were at the time in use and not available. It is a reasonable inference that Martin acted under the direction of appellants in taking the chain, because it does not appear that it was his duty to assume charge and straighten the cable whenever that work might be necessary, or that such work was entirely delegated to him on this occasion. Beihoffer was upon the ground, standing near him, and directing proceedings, and from such circumstances it will not necessarily be inferred that Martin had taken the matter into his own hands. True, at the time of starting the team, or soon after, according to the witness Underwood, both he and Beihoffer told Martin that it was not safe for him to walk behind the cable; that Underwood told him to hitch the team directly to the cable, without the chain; and that Martin had replied that if he did that the horses, when they stopped in the mud, would be drawn back "into" the cable. This fact is relied upon by appellants to show that Martin had been

sufficiently warned of the danger, and had of his own motion undertaken to go ahead, and thus assumed the risks.

. In referring to this branch of the case it is necessary to bear in mind that the evidence is sufficient to warrant the conclusion that the chain in question was furnished by appellants as an instrumentality for the purpose of straightening the cable, and that appellants either directed, or acquiesced in the method of attaching the team thereto. Of course, if there had been room between the team and cable for the driver to walk, that would have been the proper place for him; but there was not, and the necessities of the occasion required him to walk behind the cable. It does not appear how far behind it he was; but when the horses reached the ditch, and attempted to cross it, the extra tension put upon the chain by their plunging forward caused the chain to break. It does not appear that the cable had ever become detached upon any former occasion, nor how far back it would spring, and consequently just how far back from the cable the driver would have to walk in order to be safe. In all probability no accident would have occurred, if it had not been for the lunging of the team, which threw the extra strain on the chain. Under all these circumstances, giving due effect to the experience of the driver, and taking into account his admission, as testified to by the physician, we are of opinion that it was a question of fact to be determined by the jury whether the instrumentality was furnished by appellants, and whether decedent assumed the risks, or was guilty of contributory negligence.

Affirmed.

ELLIOTT, J. (dissenting).

In my judgment, the plaintiff failed to establish negligence on the part of the defendant, but did show that Martin was guilty of negligence which caused the accident. I therefore dissent.